Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3187 | **DATE** | 7/28/2004 |
| **CASE TITLE** | Henry vs. City Colleges of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, defendant's motion for summary judgment is granted. Enter Memorandum Opinion and Order. Pretrial conference set for 9/7/04 and jury trial set for 10/4/04 are vacated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 29 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 16 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| MF | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DITRA HENRY, | ) | |
| | ) | DOCKETED |
| Plaintiff, | ) | JUL 2 9 2004 |
| | ) | |
| v. | ) | No. 03 C 3187 |
| | ) | |
| CITY COLLEGES OF CHICAGO, | ) | Judge John W. Darrah |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Ditra Henry, filed suit against Defendant, City Colleges of Chicago, alleging Defendant discriminated against her on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e). Presently before the Court is Defendant's Motion for Summary Judgment.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, a party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001).



In the instant case, Henry did not file a response to the City Colleges' motion and has not disputed any of City Colleges' statements of material facts. Therefore, all the material facts averred by City Colleges are deemed admitted. *See Oates v. Discovery Zone*, 116 F.3d 1161, 1167 (7th Cir. 1997); L.R. 56.1(b)(3)(B). Even though Henry failed to respond to City Colleges' statement of material facts and such facts are deemed admitted, City Colleges' Motion for Summary Judgment will only be granted if it can demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *See Johnson v. Gudmundson*, 35 F.3d 1104, 1112 (7th Cir. 1994).

City Colleges operates seven independently accredited community colleges in the City of Chicago. (Def.'s 56.1(a)(3) Statement ¶ 2). City Colleges provides educational services to students, including the Adult Education Department at Truman College where GED courses, English as a Second Language ("ESL"), and Civics is taught. (Id., ¶¶ 3-4).

Doctor Phoebe Helm was the President of City Colleges' Truman College. (Def.'s 56.1(a)(3) Statement ¶ 5). Among her duties as President was the responsibility for making hiring recommendations to the Chancellor, who in turn made recommendations to the Board of Trustees. (Id., ¶ 6).

In March 2002, City Colleges posted a vacancy for two Adult Education Manager positions at Truman College. (Def.'s 56.1(a)(3) Statement ¶ 7). This position was new to City Colleges for the 2002-2003 school year. (Id., ¶ 8). The primary role of the Adult Education Manager is to provide leadership, management, and direction to the Adult Education Department and its staff. (Id., ¶ 9). The qualifications for the position are set forth in the job posting and job description. (Id., ¶ 10). A required qualification for the position is five years of administrative experience in adult

education and/or ESL programs or an equivalent combination of training and experience. (Id., ¶ 11). The Adult Education Manager is expected to perform the following administrative functions: conduct performance evaluations; conduct interviews; make hiring and disciplinary recommendations; develop remediation plans; participate in pre-disciplinary meetings; participate in policy and strategy development; administer the collective bargaining agreement; assist in the development of curriculum; develop training plans for staff improvement and professional development; conduct training classes; plan and conduct staff meetings; develop procedures for program implementation; analyze program data and prepare reports for executive staff; participate in budget planning; and perform other related management, supervisory and administrative duties as needed. (Id., ¶ 13). Most important to Dr. Helm was that candidates for the position have experience supervising and evaluating faculty. (Id., ¶ 12).

Armando Mata, Dean of Adult Education at Truman College, created a committee to screen candidates for the Adult Education Manager positions. (Def.'s 56.1(a)(3) Statement ¶ 16). Dr. Helm did not direct Mata to create the Committee nor did she have any involvement with the Committee's interview process. (Id., ¶ 17). As President of Truman College, Dr. Helm interviewed candidates for professional-level positions before making hiring recommendations to the Chancellor. (Id., ¶ 18).

On March 25, 2002, Henry, an African-American, sent Mata a letter in which she expressed her interest in an Adult Education Manager position at Truman College. (Def.'s 56.1(a)(3) Statement ¶¶ 1, 19). As of that date, Henry was employed as a teacher at College of Lake County. (Id., ¶ 20). On April 4, 2002, Henry was interviewed by Mata's Committee. (Id., ¶ 21). At the end of the interview, Mata told Henry that she would be contacted if she was selected to interview with Dr. Helm. (Id., ¶ 23). In addition to Henry, Mata's Committee interviewed Carol McCormick

3

(Caucasian), Ruth Lambach (Caucasian), Steve Perrine (Caucasian), Sheldon Silver (Caucasian), Frances Westbrook (Caucasian), Carol Redding (African-American), Kathy Krokar (Caucasian), and Sonia Nassief (Asian). (Id., ¶ 24).

Shortly after her interview, Henry received a telephone call to schedule an interview with Dr. Helm and Vice-President Doctor Marguerite Boyd. (Def.'s 56.1(a)(3) Statement 25). Because of knee surgery on April 5, 2002, Henry was unable to interview with Dr. Helm and Dr. Boyd face-to-face. (Id., ¶¶ 26-27). To accommodate Henry, a telephone interview was scheduled with Dr. Helm and Dr. Boyd for April 15, 2002. (Id., ¶ 28).

During the telephone interview, Dr. Helm and Dr. Boyd communicated with Henry via a speaker phone. (Def.'s 56.1(a)(3) Statement ¶ 29). Henry does not recall anything specific about the interview with Dr. Helm and Dr. Boyd. (Id., ¶ 30). At most, Henry recalls Dr Helm and Dr. Boyd's asking how she would handle hypothetical situations if she was an administrator. (Id., ¶ 31).

Dr. Helm asked Henry the same types of questions she asked all other applicants for the Adult Education Manager position. (Def.'s 56.1(a)(3) Statement ¶ 32). Dr. Helm recalls asking the applicants how they would create a faculty evaluation system, what they considered to be "good teaching" and how they would interact with the teachers as an administrator. (Id., ¶ 33). At the end of Henry's interview, Dr. Helm informed Henry that other candidates were being interviewed and that she would be contacted if the College decided to extend her an offer for the position. (Id., ¶ 34).

In addition to Henry, Dr. Helm interviewed Lambach, Perrine, Silver, McCormick, and Dianne Torres (Hispanic) for the two Adult Education Manager positions. (Def.'s 56.1(a)(3) Statement ¶ 35). Torres initially applied for a Spanish faculty position at Truman College and was

interviewed by a faculty screening committee, not by Mata's Committee. (Id., ¶ 36). Based on the recommendation of the faculty screening committee, Dr. Helm initially interviewed Torres for the faculty position. (Id., ¶ 38). Dr. Helm thought that Torres's experience and background made her highly qualified for the Adult Education Manager position. (Id., ¶ 39).

On April 18, 2002, Dr. Helm interviewed Torres for the Adult Education Manager position. Mata, Darnton, and Dr. Boyd also participated in the interview. (Def.'s 56.1(a)(3) Statement ¶ 40). On April 19, 2002, Dr. Helm recommended Torres and Lambach for the two Adult Education Manager positions at Truman College. (Id., ¶ 41). Dr. Helm's recommendation to hire Torres was supported by Mata, Dr. Boyd, and Doctor Roberson, the Vice Chancellor for Adult Education. (Id., ¶ 42).

According to Henry, the decision to hire Lambach instead of her for the position was not discriminatory because Lambach was interviewed by Mata's Committee. (Def.'s 56.1(a)(3) Statement ¶ 43). Instead, Henry claims the decision to hire Torres instead of Henry was discriminatory. Henry admits that she has no direct evidence that she was not selected for the position because of her race. (Id., ¶ 44). Other than the fact that Torres did not meet with Mata's Committee, Henry has no facts supporting her claim of race discrimination. (Id., ¶ 45).

Mata's Committee also interviewed Caucasian applicants who were neither interviewed by Dr. Helm nor recommended for the Adult Education Manager position. (Def.'s 56.1(a)(3) Statement ¶ 46). Dr. Helm never met Henry and did not learn that Henry was African-American until after she made the recommendation to hire Torres and Lambach. (Id., ¶ 47).

Henry has a Master's Degree in Linguistics and speaks only English fluently. (Def.'s 56.1(a)(3) Statement ¶¶ 48-49). Henry taught English as a Second Language, full-time, since 1998.

5

(Id., ¶ 50). Between 1993 and 1998, Henry taught English as a Second Language on a part-time basis. (Id., ¶ 51). Between 1987 and 1993, Henry was employed as a non-tenured teacher at three different high schools. Henry did not attain tenure at any of the schools. (Id., ¶ 52). Henry has no supervisory or administrative experience. (Id., ¶ 53). Henry has no independent knowledge regarding Torres' qualifications for the Adult Education Manager position. (Id., ¶ 54).

Torres has a Master's Degree in Spanish/Latin American Studies and has completed all pre-thesis requirements for her Ph.D. (Def.'s 56.1(a)(3) Statement ¶ 55). Torres is multi-lingual and has worked as an International Program Director for McDonnell Douglas Corporation for eight years. (Id., ¶¶ 56-57). As International Program Director for McDonnell Douglas, Torres was part of a four-person management team responsible for analyzing and developing trade and image enhancement projects for the Ministry of Defense. Her team also initiated, implemented, and managed programs, including an international business internship program, and organized international training seminars. (Id., ¶ 58).

Torres also worked as a college administrator for a university in Columbia for ten years. (Def.'s 56.1(a)(3) Statement ¶ 59). While working in Columbia, Torres co-founded and participated in a major reorganization of the humanities academic program, introducing change at all institutional levels. This project included organizing international faculty and students. At the same time, Torres chaired the Department of Spanish and Latin American Literature and was an Associate Professor of Spanish Literature and Literary Criticism. (Id., ¶ 60). Torres also has a significant amount of experience infusing technology in the classroom based on her experience at Adlai Stevenson High School. (Id., ¶ 62). Torres has experience teaching ESL and discussed this experience with Dr. Helm during her interview. (Id., ¶¶ 63-64).

Dr. Helm's decision to recommend Torres for the position was based primarily on her extensive administrative and supervisory experience, her experience evaluating faculty, her strong academic background, and the fact that she is multi-lingual. (Def.'s 56.1(a)(3) Statement ¶ 65). Dr. Helm was very impressed with Torres' experience at McDonnell Douglas and at Columbia, as well as her ability to get colleagues to participate in developing and utilizing computer programs in the classroom. (Id., ¶ 66).

As to Henry, Dr. Helm was concerned about Henry's lack of supervisory or administrative experience. (Def.'s 56.1(a)(3) Statement ¶ 67). Dr. Helm was also concerned that Henry had taught at a number of different schools but had left each one prior to attaining tenure. (Id., ¶ 68). Based on Torres' experience and background, Dr. Helm believed that Torres was more qualified than Henry for the Adult Education Manager position. (Id., ¶ 69). Henry admits that Dr. Helm may have thought that Henry was unqualified for the position. (Id., ¶ 70).

Title VII makes it unlawful for an employer to fail or refuse to hire an individual, or otherwise discriminate against an individual with respect to her compensation, based on that person's race. 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove discrimination through either direct or circumstantial evidence or the indirect burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 982 (7th Cir. 1999) (*Jackson*). Direct evidence is defined as "evidence 'which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption.'" *Plair v. E.J. Brach & Sons*, 105 F.3d 343, 347 (7th Cir. 1997) (citation omitted). In an employment discrimination case, direct evidence must speak directly to the issue of discriminatory intent, and it must relate to the specific employment decision in question. *Cowen v. Glenbrook Security*

7

*Serv., Inc.*, 123 F.3d 438, 443 (7th Cir. 1997). Henry has not presented any direct evidence of discrimination; thus, the focus is on the *McDonnell Douglas* burden-shifting method.

Under the *McDonnell Douglas* burden-shifting test, the plaintiff must first establish a *prima facie* case by the preponderance of the evidence. *Jackson*, 176 F.3d at 982. If the plaintiff establishes a *prima facie* case, a rebuttable presumption is created; and the employer must come forward with evidence of a legitimate, nondiscriminatory reason for its actions. If the employer meets this requirement, the burden shifts back to the plaintiff to demonstrate, again, by a preponderance of the evidence, that reasons proffered by the employer are actually a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804; *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 394 (7th Cir. 1998) (*Adreani*).

To establish a *prima facie* case of race discrimination, a plaintiff must establish that: (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite her qualifications, she was rejected; and (4) the position was given to someone outside of her protected class who had similar or lesser qualifications than she did. *See Malacara v. City of Madison*, 224 F.3d 727, 729 (7th Cir. 2000).

Plaintiff has established that she is a member of a protected class and that she applied for the position of Adult Education Manager. However, she has failed to establish that she was qualified for the position for which she applied. The position required five years of administrative experience in Adult Education and/or ESL programs or an equivalent combination of training and experience. Henry concedes that she lacked the supervisory and/or administrative experience necessary for the position.

Plaintiff also failed to establish that the position was given to someone outside of her

protected class who had similar or lesser qualifications than she did. The undisputed facts demonstrate that Torres was more qualified for the position than Henry and that Torres had the experience and qualifications required, and sought by Dr. Helm, for the position.

Even if Henry was able to establish a *prima facie* case, she has failed to establish that Dr. Helm's reasons for not hiring her were a pretext to race discrimination. A plaintiff can establish pretext by showing that the employer's explanation is unworthy of credence or that a discriminatory reason more likely motivated the employer. *Debs v. Northeastern Illinois Univ.*, 153 F.3d 390, 395 (7th Cir. 1998) (*Debs*). Pretext in this context does not mean a mistake; rather, it means "a lie, specifically a phony reason for some action." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir 1995). An honest belief in the nondiscriminatory reason offered by the decision-maker will be sufficient even if the reasons are foolish, trivial, or even baseless. *Debs*, 153 F.3d at 396.

Here, Dr. Helms did not know that Henry was African-American at the time of the interviews or the recommendation of Torres for the position. Furthermore, as indicated above, the undisputed facts demonstrate that Torres met the required qualifications for the position and was more qualified for the position than Henry. Henry has failed to establish that Dr. Helm's hiring of Torres because of her superior qualifications, instead of Henry, was a pretext to discrimination.

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.

Dated: 7-28-04

JOHN W. DARRAH
United States District Judge